**In re STERLING CHEMICALS HOLDINGS, INC., et al., Debtors.**

**No. 01–37805–H4–11.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

May 14, 2003.

## MEMORANDUM OF DECISION

WILLIAM R. GREENDYKE, Chief Judge.

Came on to be considered certain fee applications submitted by Andrews & Kurth, Mayor, Day, Caldwell & Keeton LLP ("A & K"), Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden, Arps"), The Groom Law Group, Chartered ("Groom"), Arthur Anderson LLP ("Anderson"), and Akin, Gump, Strauss, Hauer & Feld LLP ("Akin, Gump") (collectively referred to as "the Professionals"). On or about February 20, 2002, the United States Trustee ("UST") filed objections to all of the Professionals' initial fee applications, except Groom's, to which the UST lodged an informal objection. The primary ground upon which the UST objected to the fee applications was that the Professionals were requesting compensation for time spent conducting conflicts checks to demonstrate their "disinterestedness" under § 327 of the Bankruptcy Code and for preparing retention applications and verified statements of connections pursuant to Fed. R. Bankr.P.2014. A hearing was held on the fee applications on February 27, 2002, and the court took the matter under advisement, permitting the Professionals to present further arguments though post-hearing submissions. On April 5, 2002, the above named Professionals filed a Joint Submission in support of their positions. A hearing on the final fee applications was held on April 30, 2003, and argument was made. This memorandum evidences the court's ruling made in open court.

The UST contends that because the Bankruptcy Code requires bankruptcy

counsel and other professionals, except for special counsel, to be "disinterested", the obligation to determine whether a profes-·sional meets this standard and can work on a particular case is a prerequisite and continuing obligation for continued employment. As such, this obligation is "homework" for the professional and not a benefit to the estate or a reasonable cost for the estate to bear. The UST cites *In re Property Company of America Joint Venture,* 110 B.R. 244 (Bankr.N.D.Tex. 1990), in which Judge Abramson found that a review of potential conflicts was done for the benefit of the law firm and provided no benefit to the estate, and, as such, should not be compensable. *Id.* at 251.

The Professionals in this case have responded, citing primarily the 5th Circuit's opinion in *Rose Pass Mines, Inc. v. Howard (In re Rose Pass Mines, Inc.),* 615 F.2d 1088 (5th Cir.1980). In that case, the circuit held that counsel for the trustee (or any professional hired under §§ 327 and/or 1103) should be entitled to reasonable compensation for preparation of fee applications and attendance at any necessary hearings. The court reasoned that it would be "penurious" for the Bankruptcy Court to impose rigid application requirements upon counsel as a condition of payment and yet not compensate the applicant for time and effort spent complying with the procedural requirements of the Code and Rules.

The Professionals here make a direct analogy between the facts and circumstances involved in *Rose Pass Mines* and those involved in this case. While this court initially (and ultimately) agrees with the Professionals, some distinction between this case and *Rose Pass Mines* is necessary.

First, in this case, one or more of the fee applications included a request for reimbursement of fees associated with an initial conflicts check performed prior to accepting the engagement-as distinguished from: (1) conflicts checks done because of voluntary actions taken by the firm or firms in connection with their own business affairs; or (2) any initial or ongoing need to make an analysis and reporting of "all of the person's [counsel's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee or [its employees]." *See* FED. R. BANKR. P.2014(a).

■ In this case, one of the applicants, Andrews & Kurth, merged with another law firm midstream during this case. Part of that merger process involved a conflicts and "connections" check with the members of the new firm. This work neither benefitted the Debtor and/or the estate, nor was it required by the court but for the business decisions of the two firms. Clearly this activity falls outside the rationale of *Rose Pass Mines* and is not compensable.

■ Second, the Texas Disciplinary Rules of Professional Conduct prescribe proper conduct for purposes of professional discipline. The disciplinary rules pertaining to conflicts (and there are several) are largely mandatory as opposed to discretionary. *See generally* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06–1.09, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998). The court views compliance with these rules as a professional condition to employment that must be ethically and professionally satisfied by counsel (and in certain circumstances, with the permission of clients or former clients) prior to accepting employment. If a firm cannot ethically or professionally represent a party, it seems equally inappropriate (and unprofessional) to charge that never-to-be client for such a "professional" con-

clusion. To this court, the converse also seems to be the correct result-that an ultimate client should not be charged for that level of conflicts checking that is mandated by the disciplinary rules as a condition of employment.

■ Once, however, the level of involvement crosses over from a conflicts check required by the Texas Disciplinary Rules to that level of analysis and *disclosure* required by the Bankruptcy Code and Rules, the activity becomes compensable under the holding of *Rose Pass Mines.*

This Memorandum of Decision was written in response to the objections of the UST, the Joint Submission filed by the Professionals, and the arguments and rulings made in open court on April 30, 2003. As such, this Memorandum constitutes partial findings and conclusions in connection with all fee orders flowing from the hearings of April 30, 2003 in the Sterling Chemicals Holdings, Inc. case.

The court will disallow all fees for initial conflicts checking done under state law (Texas Disciplinary Rules). The court will, in the case of the Andrews & Kurth, Mayor, Day, Caldwell & Keeton LLP application, disallow all fees associated with conflicts checking or Fed. R. Bankr.P. 2014(a) disclosures made necessary by the merger of Andrews & Kurth with the Mayor, Day, Caldwell firm. The court will, however, otherwise allow compensation for all reasonable and necessary efforts to comply with the disclosure requirements of Fed. R. Bankr.P.2014(a).

Counsel are expected to submit, to the extent necessary, forms of order on their respective final fee applications which comport with this ruling.

It is so **ORDERED**.